

**StarStone Specialty Insurance Company**

Harborside 5,
185 Hudson Street, Suite 2600,
Jersey City, NJ 07311

t +1 (201)743-7700
f +1 (201)743-7701

www.starstone.com

*VIA CERTIFIED MAIL RETURN RECEIPT*
*AND E-MAIL TO: enan@stillmanwelch.com*
Addison Hasid VI, LLC
C/O Enan Stillman
Stillman Welch, LLC
3453 Pierce Drive, Suite 150
Chamblee, GA 30341

October 17, 2018

Dear Enan,

| | | |
|---|---|---|
| RE: | Named Insured: | Addison Hasid VI, LLC |
| | StarStone Claim No.: | 100-74-297 |
| | StarStone Policy No.: | 85310U160ALI |
| | Date of Loss: | February 10, 2017 |
| | Location: | Sierra Ridge Apartments |

### PLEASE REFERENCE OUR CLAIM NO. ON ALL CORRESPONDENCE

I am Senior Claims Examiner for StarStone National Insurance Company f/k/a Torus National Insurance Company, part of the Enstar Group, which has issued the above-referenced following form excess policy (the "Torus Policy") to Addison Hasid VI, LLC for the period 10/04/2016 to 08/30/2017.

StarStone is in receipt of a Complaint filed on June 7, 2018 in the State Court of Fulton County captioned *Tamisha Hudson, Individually and as Administrator of the Estate of Dallas L. Spruill, Deceased, v. Addison Hasid VI, LLC*, 18EV002647 (the "Complaint"). The Complaint seeks damages for the alleged personal injuries to and wrongful death of Dallas L. Spruill, who was a resident at Sierra Ridge Apartments, 3020 Delmar Lane NW, Atlanta, Georgia 30311.

This letter is being directed to you as authorized representative for Addison Hasid VI, LLC. To the extent you believe that you are not the proper person to receive this notice, please forward this letter to the appropriate person or, in the alternative, immediately contact the undersigned. This letter is intended to advise you of StarStone's coverage position in this matter as it now stands and to inform you of certain aspects of the Torus Policy that may apply to the facts and information provided to StarStone.  Please be advised that our investigation is continuing as the above-referenced lawsuit proceeds, and we reserve the right to amend or supplement this letter at any time.

# EXHIBIT B



## FACTUAL BACKGROUND

The following is a recitation of the facts and the allegations of the Complaint. These facts are assumed true solely for the purposes of this reservation of rights. However, StarStone makes no admission through such statement and reserves the right to modify or supplement it at any time.

On February 10, 2017, Dallas Spruill claims that he was an invitee at Sierra Ridge Apartments, 3020 Delmar Lane NW, Atlanta, Georgia 30311 ("Sierra Ridge"). Shortly before 4:42 P.M., an individual named Denarius Harris approached Spruill's vehicle, a Chevy Impala, to ask Spruill about buying a television. After a brief discussion, Harris shot Spruill multiple times and robbed him. Spruill unfortunately died of his injuries at the scene.

Plaintiff Tamisha Hudson ("Plaintiff") is Spruill's mother. Plaintiff alleges that Defendant Addison Hasid VI, LLC ("Defendant") owned, operated and managed Sierra Ridge. Plaintiff claims that Defendant failed to properly maintain, inspect, and secure Sierra Ridge. Plaintiff also claims Defendant failed to utilize an adequate security protocol or patrol, failed to controlled access to the premises, and failed to provide adequate lighting at the premises in light of Defendant's knowledge of criminal activity at Sierra Ridge.

Plaintiff claims that Spruill's death was the result of Defendant's negligence. Plaintiff brings claims for the wrongful death of Spruill. As administrator of Spruill's estate, Plaintiff also brings claims for the personal injuries to Spruill endured before he died and for his funeral and burial expenses. Finally, Plaintiff asserts claims for punitive damages and contends that she is entitled to an award of attorneys' fees.

## The Arch Policy

Addison Hasid VI, LLC is insured on a primary basis by Arch Specialty Insurance Company, Policy No. AGL0041008-00 with policy period 08/30/2016 to 08/30/2017 (the "Arch Policy"). The Arch Policy has an "each occurrence" limit of $1 million and an aggregate limit of $2 million. The Arch Policy contains the following language in relevant part:

> **1. Insuring Agreement**
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. **[...]**
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" **[...]**

The Arch Policy contains certain exclusions which limit coverage:



## PUNITIVE DAMAGES EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to any claim, "suit", demand or loss for punitive damages, treble damages, fines, penalties or exemplary damages **[...]**

## LEAD EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", "property damage", or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from "lead hazard".

This exclusion includes but is not limited to compliance with any request, demand, order, or statutory or regulatory requirement, or any other action authorized or required by law, or any loss, cost or expense arising out of or relating to the investigation of, abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, lead, as well as any costs, fees, expenses, penalties, judgments, fines, or sanctions arising from or relating thereto.

As used in this exclusion, "lead hazard" means the:



**(1)** actual, alleged or threatened exposure to, consumption, ingestion of, inhalation of, absorption of, existence of, or presence of, lead in any manner or form whatsoever, either directly or indirectly;
**(2)** actual or alleged failure to warn, advise or instruct related to lead in any manner or form whatsoever;
**(3)** actual or alleged failure to prevent exposure to lead in any manner or form whatsoever; or
**(4)** actual or alleged presence of lead in any manner or form whatsoever, in any place whatsoever, whether or not within a building or structure, including its contents.

The Arch Policy also contains certain conditions precedent to coverage:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**[...]**

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**
**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
**(1)** How, when and where the "occurrence" or offense took place;
**(2)** The names and addresses of any injured persons and witnesses; and
**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:
**(1)** Immediately record the specifics of the claim or "suit" and the date received; and
**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:
**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
**(2)** Authorize us to obtain records and other information;
**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.



### The Torus Policy

The Torus Policy is a form-following policy providing $5 million in excess coverage to Addison Hasid VI, LLC. The Torus Policy identifies the Arch Policy as the underlying policy. The language of the Torus Policy reads as follows, in relevant part:

### SECTION I. – COVERAGE

**A.** This Policy shall provide the Insured with Excess Liability Insurance coverage in accordance with the same warranties, terms, conditions, exclusions and limitations as are contained, on the Inception Date of this Policy, in the **Followed Policy** set forth in Item 7. of the Declarations of this Policy, subject to the premium, limits of liability, retention, policy period, warranties, exclusions, limitations and any other terms and conditions of this Policy including any and all endorsements attached hereto, inconsistent with or supplementary to the **Followed Policy**.

**B.** Notwithstanding **A.** above, in no event shall this Policy follow the terms, conditions, exclusions or limitations in the **Followed Policy** or provide coverage under this Policy with respect to or as a result of any of the following clauses or similar clauses in the **Followed Policy**:
**1.** Liberalization clause;
**2.** Cancellation, non-renewal or change in terms provisions;
**3.** State-specific No-fault, Uninsured Motorist or Underinsured Motorist law, or any similar law;
**4.** Crisis Management or Crisis Response endorsement; or
**5.** Sublimit of liability, unless coverage for such sublimit is specifically endorsed to this Policy.

**[...]**

### SECTION III. - RETENTION
**A.** The Limits of Liability stated in Item 5. of the Declarations of this Policy apply in excess of:
**1.** The total of the limits of liability of the **Underlying Policies** applicable on a per occurrence, per claim or per loss basis, but in no event in an amount less than the total of the per occurrence, per claim or per loss limits of liability of the Underlying Excess Policies stated in Item 6 of the Declarations of this Policy;



**2.** The total of the limits of liability of the **Underlying Policies** applicable on an aggregate basis, where an amount is shown in the aggregate limit of liability of the **Underlying Policies** stated in Item 6 of the Declarations of this Policy, but in no event in any amount less than the aggregate limits of liability of the Underlying Excess Policies stated in Item 6. of the Declarations of this Policy **[...]**

**B.** This Policy will not apply in excess of any reduced or exhausted limits of liability of the **Underlying Policies** to the extent that such reduction or exhaustion is caused by:
**1.** Payment of amounts on account of occurrences or claims that are not covered under this Policy;
**2.** Uncollectibility in whole or in part of the limits of liability of an **Underlying Policy [...]**

The Torus Policy contains certain exclusions which limit coverage:

**SECTION IV. - EXCLUSIONS**
This Policy shall not apply to:

**[...]**

**V. LEAD**

Any liability arising out of the manufacture, distribution, sale, installation, removal, utilization, ingestion, or inhalation of, presence of or exposure as the case may be to lead or any material or product(s) containing lead.

The Torus Policy also contains certain conditions precedent to coverage:

**SECTION VI. – CONDITIONS**

**[...]**

**F. REQUIRED NOTICES TO INSURER BY INSURED**
**1. Notice of Occurrence, Offense, Claim or Loss**
**a.** The Insured shall, as a condition precedent to the obligations of the Insurer under this Policy, give written notice as soon as practicable to the Insurer of any occurrence, offense, claim or suit likely to involve this Policy.

**b.** Without limiting the requirements of paragraph a. above, the Named Insured shall separately, and as soon as practicable, give written notice to the Insurer when a payment is made or reserve established for any



occurrence, offense, claim or suit which has brought the total of all payments and reserves by the Insured, or Underlying Insurers to a level of twenty-five percent (25%) or more of the Underlying Aggregate Limit.

## Coverage Evaluation

The Arch Policy excludes coverage for "claim[s], suit[s], demand[s] or loss for punitive damages, treble damages, fines, penalties or exemplary damages." The Torus Policy provides excess coverage subject to the exclusions and limitations of the Arch Policy. Plaintiff's Complaint alleges that Defendant's actions "raise the presumption of conscious indifference to consequences" and that "Plaintiff is entitled to recover punitive damages[.]" To the extent the Arch Policy's punitive damages exclusion applies to Plaintiff's claims, there would be no coverage for such damages under the Torus Policy. StarStone reserves its rights to enforce the punitive damages exclusion.

The Arch Policy also excludes coverage for "any claim, 'suit,' demand or loss that alleges 'bodily injury' ... that in any way, in whole or part, arises out of, relates to or results from 'lead hazard.'" "Lead Hazard" is defined in the Arch Policy as the "actual, alleged or threatened exposure to, consumption, ingestion of, inhalation of, absorption of, existence of, or presence of, lead in any manner or form whatsoever, either directly or indirectly" as well as the "actual or alleged failure to prevent exposure to lead in any manner or form whatsoever."

The Torus Policy similarly excludes coverage for "[a]ny liability arising out of the manufacture, distribution, sale, installation, removal, utilization, ingestion, or inhalation of, presence of or exposure as the case may be to lead or any material or product(s) containing lead." To the extent the Arch Policy's lead exclusion and/or the Torus Policy's lead exclusion apply, there would be no coverage under the Torus Policy. StarStone reserves its rights to enforce the lead exclusions.

Both the Arch and Torus policies provide that notice of an occurrence is a condition precedent to coverage. The Arch Policy states that "[y]ou must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." The Torus Policy states that "[t]he Insured shall, as a condition precedent to the obligations of the Insurer under this Policy, give written notice as soon as practicable to the Insurer of any occurrence, offense, claim or suit likely to involve this Policy." The shooting of Spruill occurred on February 10, 2017. StarStone first received notice of the shooting on July 9, 2018. To the extent Addison Hasid VI, LLC failed to give notice to StarStone in accordance with the conditions of the respective policies, Arch and StarStone would have grounds to deny coverage. StarStone reserves its rights to enforce the notice provisions.

## NOTICE OF DEFENSE AND RESERVATION OF RIGHTS



StarStone's preliminary investigation of this matter indicates that there appears to be coverage for a portion of the damages sought by Plaintiff, but that such coverage is limited by the terms, exclusions and conditions of the Arch and Torus policies. Moreover, StarStone has no responsibility for Plaintiff's damages until the limits of the Arch Policy are exhausted.

StarStone reserves its rights, to the fullest extent permitted by Georgia or other applicable law, to limit or deny coverage.  StarStone further reserves the right to litigate all coverage issues through a declaratory judgment action, either in an independent action or by intervention in another lawsuit, to seek an allocation of covered damages or to deny coverage in whole or part to one or more potential insured. To the extent any judgment is entered which fails to differentiate between covered and uncovered categories of damages, StarStone reserves the right to deny indemnity coverage for the entire unallocated award. This reservation includes the right to enforce its reimbursement rights by litigation following any settlement, payment, indemnity, judgment or appeal.

StarStone advises you that no action heretofore or hereafter taken by or on behalf of StarStone shall be construed as a waiver of any rights it may have with respect to the Policy. StarStone specifically reserves the right to rely upon any and all policy defenses, and further advises you that any action taken by or on behalf of StarStone shall in no way change, waive, invalidate or forfeit any of the terms, conditions, limitations and requirements of the Policy or any of the rights that StarStone has to deny or limit coverage pursuant to the Policy, in whole or part.

We trust your understanding of the above stated coverage position is clear.  However, should you disagree with our position, please promptly communicate your notice of disagreement to the undersigned in writing.  Having adequately considered the detailed reasoning for our no coverage position, we request you describe the basis for your disagreement so that we can provide to you an adequate reply and/or reevaluation of that position.

Should you have any questions regarding the above, please do not hesitate to contact me.

Sincerely,

David Stroup, Senior Claims Examiner

