

ENSTAR (US) Inc.

*VIA CERTIFIED MAIL RETURN RECEIPT
AND E-MAIL TO: @.com*
MMG Management, LLC
1303 Hightower Trail, Suite 101
Atlanta, GA 30350

May 29, 2019

To Whom it may concern,

| | | |
|---|---|---|
| RE: | Named Insured: | Addison Hasid VI, LLC |
| | StarStone Claim No.: | 100-74-297 |
| | StarStone Policy No.: | 85310U160ALI |
| | Date of Loss: | February 10, 2017 |
| | Location: | Sierra Ridge Apartments |

**PLEASE REFERENCE OUR CLAIM NO. ON ALL CORRESPONDENCE**

Enstar (US) Inc. is the claims administrator for StarStone National Insurance Company f/k/a Torus National Insurance Company ("SNIC"), which has issued the above-referenced following form excess policy (the "StarStone Policy") to Addison Hasid VI, LLC for the period 10/04/2016 to 08/30/2017.

Enstar is in receipt of a Complaint filed on June 7, 2018 in the State Court of Fulton County captioned *Tamisha Hudson, Individually and as Administrator of the Estate of Dallas L. Spruill, Deceased, v. Addison Hasid VI, LLC*, 18EV002647 (the "Complaint"). The Complaint seeks damages for the alleged personal injuries to and wrongful death of Dallas L. Spruill, who was a resident at Sierra Ridge Apartments, 3020 Delmar Lane NW, Atlanta, Georgia 30311. That case is now before the United States District Court, Norther District of Georgia, Atlanta Division, Civil Action No. 1:18-cv-03694-CC. Before the Court is a motion for leave to file an amended complaint to add MMG Management, LLC as a defendant to the litigation. We are not aware of the Court ruling on this motion, but we expect it will be granted.

This letter is being directed to you as authorized representative for MMG Management, LLC. To the extent you believe that you are not the proper person to receive this notice, please forward this letter to the appropriate person or, in the alternative, immediately contact the undersigned. This letter is intended to advise you of SNIC's coverage position in this matter as it now stands and to inform you of certain aspects of the StarStone Policy that may apply to the facts and information provided to SNIC. Please be advised that our investigation is continuing as the above-referenced lawsuit proceeds, and we reserve the right to amend or supplement this letter at any time.

### FACTUAL BACKGROUND

The following is a recitation of the facts and the allegations of the Complaint and the draft "First Amended Complaint" that would add MMG Management, LLC as a party to the lawsuit. These facts are assumed true solely for the purposes of this reservation of rights. However, SNIC makes no admission through such statement and reserves the right to modify or supplement it at any time.

On February 10, 2017, Dallas Spruill claims that he was an invitee at Sierra Ridge Apartments, 3020 Delmar Lane NW, Atlanta, Georgia 30311 ("Sierra Ridge"). Shortly before 4:42 P.M., an individual

# EXHIBIT C

named Denarius Harris approached Spruill's vehicle, a Chevy Impala, to ask Spruill about buying a television. After a brief discussion, Harris shot Spruill multiple times and robbed him. Spruill unfortunately died of his injuries at the scene.

Plaintiff Tamisha Hudson ("Plaintiff") is Spruill's mother. Plaintiff alleges that Defendants Addison Hasid VI, LLC and MMG Management, LLC ("Defendants") owned, operated and managed Sierra Ridge. Plaintiff claims that Defendants failed to properly maintain, inspect, and secure Sierra Ridge. Plaintiff also claims Defendants failed to utilize an adequate security protocol or patrol, failed to controlled access to the premises, and failed to provide adequate lighting at the premises in light of Defendant's knowledge of criminal activity at Sierra Ridge.

Plaintiff claims that Spruill's death was the result of Defendants' negligence. Plaintiff brings claims for the wrongful death of Spruill. As administrator of Spruill's estate, Plaintiff also brings claims for the personal injuries to Spruill endured before he died and for his funeral and burial expenses. Finally, Plaintiff asserts claims for punitive damages and contends that she is entitled to an award of attorneys' fees.

We understand that are three potential policies applicable to MMG in this matter. MMG has its own CGL policy with Central Insurance Companies ("Central"). Then there are two policies that cover Addison Hasid VI, LLC, a primary policy with Arch that has, for purposes of this claim, exhausted coverage, and the StarStone excess policy. These policies and their impact on the coverage available to MMG Management is set forth below.

### The Arch Policy

Addison Hasid VI, LLC is insured on a primary basis by Arch Specialty Insurance Company, Policy No. AGL0041008-00 with policy period 08/30/2016 to 08/30/2017 (the "Arch Policy"). The Arch Policy has an "each occurrence" limit of $1 million and an aggregate limit of $2 million. The Arch Policy contains the following language in relevant part:

> **1. Insuring Agreement**
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. **[...]**
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" **[...]**

The Arch Policy contains certain exclusions which limit coverage:

**PUNITIVE DAMAGES EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and



Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to any claim, "suit", demand or loss for punitive damages, treble damages, fines, penalties or exemplary damages **[...]**

The Arch Policy contains the following provisions:

**SECTION II – WHO IS AN INSURED**

**2.** Each of the following is also an insured:

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

The Arch Policy also contains certain conditions precedent to coverage:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

[...]

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**
**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
**(1)** How, when and where the "occurrence" or offense took place;
**(2)** The names and addresses of any injured persons and witnesses; and
**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:
**(1)** Immediately record the specifics of the claim or "suit" and the date received; and
**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:
**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
**(2)** Authorize us to obtain records and other information;
**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

### The StarStone Policy



The StarStone Policy is a form-following policy providing $5 million in excess coverage to Addison Hasid VI, LLC. The StarStone Policy identifies the Arch Policy as the underlying policy. The language of the StarStone Policy reads as follows, in relevant part:

### SECTION I. – COVERAGE

**A.** This Policy shall provide the Insured with Excess Liability Insurance coverage in accordance with the same warranties, terms, conditions, exclusions and limitations as are contained, on the Inception Date of this Policy, in the **Followed Policy** set forth in Item 7. of the Declarations of this Policy, subject to the premium, limits of liability, retention, policy period, warranties, exclusions, limitations and any other terms and conditions of this Policy including any and all endorsements attached hereto, inconsistent with or supplementary to the **Followed Policy**.

**B.** Notwithstanding **A.** above, in no event shall this Policy follow the terms, conditions, exclusions or limitations in the **Followed Policy** or provide coverage under this Policy with respect to or as a result of any of the following clauses or similar clauses in the **Followed Policy**:
**1.** Liberalization clause;
**2.** Cancellation, non-renewal or change in terms provisions;
**3.** State-specific No-fault, Uninsured Motorist or Underinsured Motorist law, or any similar law;
**4.** Crisis Management or Crisis Response endorsement; or
**5.** Sublimit of liability, unless coverage for such sublimit is specifically endorsed to this Policy.

[...]

### SECTION III. - RETENTION
**A.** The Limits of Liability stated in Item 5. of the Declarations of this Policy apply in excess of:
**1.** The total of the limits of liability of the **Underlying Policies** applicable on a per occurrence, per claim or per loss basis, but in no event in an amount less than the total of the per occurrence, per claim or per loss limits of liability of the Underlying Excess Policies stated in Item 6 of the Declarations of this Policy;

**2.** The total of the limits of liability of the **Underlying Policies** applicable on an aggregate basis, where an amount is shown in the aggregate limit of liability of the **Underlying Policies** stated in Item 6 of the Declarations of this Policy, but in no event in any amount less than the aggregate limits of liability of the Underlying Excess Policies stated in Item 6. of the Declarations of this Policy **[...]**

**B.** This Policy will not apply in excess of any reduced or exhausted limits of liability of the **Underlying Policies** to the extent that such reduction or exhaustion is caused by:
**1.** Payment of amounts on account of occurrences or claims that are not covered under this Policy;



**2.** Uncollectibility in whole or in part of the limits of liability of an **Underlying Policy [...]**

The StarStone Policy also contains certain conditions precedent to coverage:

### SECTION VI. – CONDITIONS

[...]

**F. REQUIRED NOTICES TO INSURER BY INSURED**
**1. Notice of Occurrence, Offense, Claim or Loss**
**a.** The Insured shall, as a condition precedent to the obligations of the Insurer under this Policy, give written notice as soon as practicable to the Insurer of any occurrence, offense, claim or suit likely to involve this Policy.

**b.** Without limiting the requirements of paragraph a. above, the Named Insured shall separately, and as soon as practicable, give written notice to the Insurer when a payment is made or reserve established for any occurrence, offense, claim or suit which has brought the total of all payments and reserves by the Insured, or Underlying Insurers to a level of twenty-five percent (25%) or more of the Underlying Aggregate Limit.

### SECTION V – DEFINITIONS

The following Definitions apply to this Policy:

B. **Underlying Policies** means those policies that are scheduled … and any other applicable underlying insurance, including any self-insured retentions.

### The Central Insurance Policy

MMG Management, LLC is insured on a primary basis by Central Insurance Company ("Central"), Policy No. CLP 9576856 13, with policy period 12/10/2016 to 12/10/2017 (the "Central Policy"). The Central Policy has an "each occurrence" limit of $1 million and an aggregate limit of $2 million. The Central Policy contains a CGL coverage form, which provides coverage for bodily injury claims as follows:

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. **[...]**

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" **[...]**

**4. Other Insurance**



> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:
>
> **a.    Primary Insurance**
>
>> This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.
>> \*     \*     \*

### Coverage Evaluation

The StarStone Policy is a true excess policy. MMG has a primary policy with Central. After reviewing the Central Policy, it is clear that it is a primary policy and provides primary coverage to MMG with a duty to defend MMG. StarStone's Policy, by contract, is a true excess policy. Therefore, SNIC will not be providing a defense to MMG, which should be provided a defense by Central. SNIC's policy may provide MMG with excess coverage however, subject to the StarStone Policy (and the Arch Policy as following form) terms and conditions. Thus, with respect to the other coverage issues, SNIC reserves its rights fully as explained below.

The Arch Policy excludes coverage for "claim[s], suit[s], demand[s] or loss for punitive damages, treble damages, fines, penalties or exemplary damages." The StarStone Policy provides excess coverage subject to the exclusions and limitations of the Arch Policy. Plaintiff's Complaint alleges that Defendant's actions "raise the presumption of conscious indifference to consequences" and that "Plaintiff is entitled to recover punitive damages[.]" To the extent the Arch Policy's punitive damages exclusion applies to Plaintiff's claims, there would be no coverage for such damages under the StarStone Policy. SNIC reserves its rights to enforce the punitive damages exclusion.

Both the Arch and StarStone policies provide that notice of an occurrence is a condition precedent to coverage. The Arch Policy states that "[y]ou must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." The StarStone Policy states that "[t]he Insured shall, as a condition precedent to the obligations of the Insurer under this Policy, give written notice as soon as practicable to the Insurer of any occurrence, offense, claim or suit likely to involve this Policy." The shooting of Spruill occurred on February 10, 2017. SNIC first received notice of the shooting on July 9, 2018. To the extent Addison Hasid VI, LLC and MMG Management, LLC failed to give notice to SNIC in accordance with the conditions of the respective policies, Arch and SNIC would have grounds to deny coverage. SNIC reserves its rights to enforce the notice provisions.

### Reservation of Rights

SNIC's preliminary investigation of this matter indicates that there may be coverage for a portion of the damages sought by Plaintiff, but that such coverage is limited, potentially entirely, by the terms, exclusions and conditions of the Arch and StarStone policies. Moreover, SNIC's coverage is excess to the Central policy that covered MMG. Thus, SNIC has no responsibility to indemnify Addison Hasid for Plaintiff's damages until the limits of the Arch Policy and the Central policy are properly exhausted.



  SNIC reserves its rights, to the fullest extent permitted by Georgia or other applicable law, to limit or deny coverage. SNIC further reserves the right to litigate all coverage issues through a declaratory judgment action, either in an independent action or by intervention in another lawsuit, to seek an allocation of covered damages or to deny coverage in whole or part to one or more potential insured. To the extent any judgment is entered which fails to differentiate between covered and uncovered categories of damages, SNIC reserves the right to deny indemnity coverage for the entire unallocated award. This reservation includes the right to enforce its reimbursement rights by litigation following any settlement, payment, indemnity, judgment or appeal.

  SNIC advises you that no action heretofore or hereafter taken by or on behalf of SNIC shall be construed as a waiver of any rights it may have with respect to the Policy. SNIC specifically reserves the right to rely upon any and all policy defenses, and further advises you that any action taken by or on behalf of SNIC shall in no way change, waive, invalidate or forfeit any of the terms, conditions, limitations and requirements of the Policy or any of the rights that SNIC has to deny or limit coverage pursuant to the Policy, in whole or part.

  We trust your understanding of the above stated coverage position is clear. However, should you disagree with our position, please promptly communicate your notice of disagreement to the undersigned in writing. Having adequately considered the detailed reasoning for our no coverage position, we request you describe the basis for your disagreement so that we can provide to you an adequate reply and/or reevaluation of that position.

  Should you have any questions regarding the above, please do not hesitate to contact me.

    Sincerely,

    David Stroup,
    Senior Claims Examiner
    [david.stroup@enstargroup.com](mailto:david.stroup@enstargroup.com)
    843.406-8704 (t)

