

# Torus Specialty Insurance Company

Following Form Excess Liability
Insurance Policy

**Company Address:**

Harborside Financial Center
Plaza Five, 29th Floor
Jersey City, NJ 07311
(201) 743-7700
www.torusinsurance.com

**To Report a Claim:**

Contact your Insurance Agent, or
Contact the Company at (201) 743-7700 or
send an email to: claimsus@torusinsurance.com

**To File a Complaint**

Contact your Insurance Agent, or
Contact the Company at (201) 743-7700 or
Contact your State Director of Insurance

## EXHIBIT E



Harborside Financial Center
Plaza Five, Suite 2900
Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com
Report claims to:
claims@torusinsurance.com

## TORUS SPECIALTY INSURANCE CO.

## FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

## DECLARATIONS

**10/10/2016 5:27:43 PM**

**POLICY NO.: 85310U160ALI**                    **RENEWAL OF: NEW**

**ITEM 1.**      (a) NAMED INSURED:  Addison Hasid VI, LLC
                 (b) ADDRESS:        3020 Delmar Ln NW
                                     Atlanta, GA 30311

**ITEM 2.**      POLICY PERIOD:  From: 10/04/2016   To: 08/30/2017
                 (12:01 A.M. prevailing time at the address stated in **Item 1.** above)

**ITEM 3.**      RETROACTIVE DATE:  Not Applicable

**ITEM 4.**      COVERAGE:                Following Form Excess Liability

**ITEM 5.**      LIMITS OF LIABILITY:   $5,000,000      Per Occurrence, Per Claim or Per Loss
                                                        (per Followed Policy)

                                        $5,000,000      Aggregate, where applicable

Excess of Limits in Item 6 below

**ITEM 6.**      LIMITS OF UNDERLYING POLICIES:
                 Per Schedule Underlying Policies          Per Occurrence, Per Claim or Per Loss
                 (See Endorsement No. 2)                   (per Followed Policy)
                                                           Aggregate, where applicable

**ITEM 7.**      FOLLOWED POLICY:
                 Company: Per Schedule Underlying Policies (See Endorsement No. 2)
                 Policy Number: AGL0041008-00
                 Coverage: Following Form Excess Liability Insurance Policy
                 Policy Period:  to 08/30/2017
                 Limits of Liability:
                                 $1,000,000      Per Occurrence, Per Claim or Per Loss
                                 $2,000,000      Aggregate, where applicable

TS EXS 0002 CW 03 10                                                      Page 1 of 2



Harborside Financial Center
Plaza Five, Suite 2900
Jersey City, NJ  07311
Tel:  201 743 7700
Fax:  201 743 7701
www.torusinsurance.com
Report claims to:
claims@torusinsurance.com

### TORUS SPECIALTY INSURANCE CO.

### FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

**ITEM 8.**    (a)    PREMIUM:                                    $5,252
              (b)    MINIMUM EARNED PREMIUM:         $0

**ITEM 9.** NOTICES TO THE INSURER:

(a)    All notices of Occurrence or Claim:    Claim Department
(b)    All other notices:                              Underwriting Department
At the address and numbers shown at the top of the Declarations Page.

**ITEM 10.**    POLICY FORM:  TS EXS 0001 CW 03 10 together with endorsements as per attached form TS EXS 0004 CW 03 10 Schedule of Endorsements:

_____
                    **Authorized Representative**

Date of Issue: 10/10/2016



Harborside Financial
Center Plaza Five, Suite
2900 Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com

## TORUS SPECIALTY INSURANCE CO.

## FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

In consideration of the payment of premium and in reliance upon the statements in the Declarations of this Policy, Torus Specialty Insurance Co., hereinafter referred to as the Insurer, agrees as follows:

### SECTION I. - COVERAGE

**A.** This Policy shall provide the Insured with Excess Liability Insurance coverage in accordance with the same warranties, terms, conditions, exclusions and limitations as are contained, on the Inception Date of this Policy, in the **Followed Policy** set forth in Item 7. of the Declarations of this Policy, subject to the premium, limits of liability, retention, policy period, warranties, exclusions, limitations and any other terms and conditions of this Policy including any and all endorsements attached hereto, inconsistent with or supplementary to the **Followed Policy**.

**B.** Notwithstanding **A.** above, in no event shall this Policy follow the terms, conditions, exclusions or limitations in the **Followed Policy** or provide coverage under this Policy with respect to or as a result of any of the following clauses or similar clauses in the **Followed Policy**:

    **1.** Liberalization clause;

    **2.** Cancellation, non-renewal or change in terms provisions;

    **3.** State-specific No-fault, Uninsured Motorist or Underinsured Motorist law, or any similar law;

    **4.** Crisis Management or Crisis Response endorsement; or

    **5.** Sublimit of liability, unless coverage for such sublimit is specifically endorsed to this Policy.

### SECTION II. - LIMITS OF LIABILITY

**A.** Where an amount is shown for the aggregate limit of liability in Item 5. of the Declarations of this Policy, the amount stated is the most the Insurer will pay for all damages covered under this Policy with respect to Coverage subject to an aggregate limit of liability in the **Followed Policy**.

**B.** Subject to **A.** above, the per occurrence, per claim, or per loss limit of liability stated in Item 5. of the Declarations of this Policy is the most the Insurer will pay for all damages arising out of any one occurrence, claim or loss as stated in the **Followed Policy**.

**C.** Defense costs to which this Policy applies shall not reduce the limits of liability stated in **A.** and **B.** above, except to the extent costs covered under the **Followed Policy** reduce the limits of liability of the **Followed Policy.**



Harborside Financial
Center Plaza Five, Suite
2900 Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com

## TORUS SPECIALTY INSURANCE CO.

## FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

**SECTION III. - RETENTION**

**A.** The Limits of Liability stated in Item 5. of the Declarations of this Policy apply in excess of:

**1.** The total of the limits of liability of the **Underlying Policies** applicable on a per occurrence, per claim or per loss basis, but in no event in an amount less than the total of the per occurrence, per claim or per loss limits of liability of the Underlying Excess Policies stated in Item 6 of the Declarations of this Policy;

**2.** The total of the limits of liability of the **Underlying Policies** applicable on an aggregate basis, where an amount is shown in the aggregate limit of liability of the **Underlying Policies** stated in Item 6 of the Declarations of this Policy, but in no event in any amount less than the aggregate limits of liability of the Underlying Excess Policies stated in Item 6. of the Declarations of this Policy;

**3.** The self-insured retention under the **Followed Policy**, if any, where the aggregate limits of liability determined in **2.** above, has been exhausted.

**B.** This Policy will not apply in excess of any reduced or exhausted limits of liability of the **Underlying Policies** to the extent that such reduction or exhaustion is caused by:

**1.** Payment of amounts on account of occurrences or claims that are not covered under this Policy;

**2.** Uncollectibility in whole or in part of the limits of liability of an **Underlying Policy**.

**C.** Notwithstanding **B.1.** above, defense costs incurred by the **Underlying Policies** shall not reduce the limits of liability of such **Underlying Policies**, except to the extent defense costs incurred by underlying insurance, including self-insured retentions, reduce the Insured's retained limit of liability under the **Followed Policy**.

**SECTION IV. - EXCLUSIONS**

This Policy shall not apply to:

**A. ASBESTOS**

Any bodily injury, property damage, personal injury, advertising injury, arising out of:

**1.** The manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers, asbestos dust or products or materials containing asbestos;

**2.** Any obligation of the insured to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers, asbestos dust or products or materials containing asbestos; or



Harborside Financial
Center Plaza Five, Suite
2900 Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com

## TORUS SPECIALTY INSURANCE CO.

## FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

**3.** Any obligation to defend any suit or claim against the insured that seeks damages if such suit or claim arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers, asbestos dust or products or materials containing asbestos.

**B.  EMPLOYMENT-RELATED PRACTICES LIABILITY**

Any liability, defense costs or damages which arise out of any:

**1.** Refusal to employ;

**2.** Termination of employment;

**3.** Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or other employment-related practices, policies acts or omissions;

**4.** Consequential bodily injury or personal injury as a result of **1.** through **3.** above; or

**5.** Any liability arising from or in any way in connection with the actual, alleged, potential or attempted actions in the course of any employer-employee relationship.

This exclusion applies whether the insured may be held liable as an employer or in another capacity and to any of your obligation to share damages with or to repay someone else who must pay damages because of the injury.

**C.  RADIOACTIVE MATTER**

Any liability arising out of any radioactive matter, whether or not naturally occurring.

**D.  KNOWN LOSS**

Any liability arising out of any claim or of any occurrence likely to give rise to a claim, of which a **Responsible Insured** was aware prior to the Inception Date set forth in Item 2. of the Declarations of this Policy, regardless of whether such **Responsible Insured** believed such claim or occurrence would involve this Policy.

For the purposes of this Exclusion, the following definitions apply:

**Responsible Insured** means an **Executive Officer** of the Insured, or any manager or equivalent level employee in the Insured's Risk Management, Insurance or Law Department.

**Executive Officer** means the Chairman of the Board, President, Chief Executive, Operating, Financial and Administrative Officers, Managing Directors, or any Executive or Senior Vice President of the Insured. Where such title is inapplicable, the equivalent level of personnel shall be substituted.



Harborside Financial
Center Plaza Five, Suite
2900 Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com

# TORUS SPECIALTY INSURANCE CO.

## FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

**E.   EXPECTED OR INTENDED**

Any liability expected or intended from the standpoint of the insured. This exclusion does not apply to bodily injury resulting from the use of reasonable force to protect persons or property.

**F.   ADVERTISING INJURY**

Any liability arising out of:

**1.**   A breach of contract, except an implied contract to use another's advertising idea in the course of advertising your goods, products or services;

**2.**   The failure of goods, products or services to conform with any statement of quality or performance made in the course of advertising your goods, products or services; or

**3.**   The wrong description of the price of goods, products or services stated in the course of advertising your goods, products or services.

**G.   WORKERS COMPENSATION**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**H.   POLLUTION LIABILITY**

**1.**   Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

    **a.**   At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    **b.**   At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    **c.**   Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

    **d.**   At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

        **1)**   If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or



Harborside Financial
Center Plaza Five, Suite
2900 Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com

# TORUS SPECIALTY INSURANCE CO.

## FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

    **2)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants;

**e.** If the bodily injury or property damage is included within the products-completed operations hazard;

**f.** That are, or that are contained in any property that is:

    **1)** Being transported or towed by, or handled for movement into, onto or from, the covered auto;

    **2)** Otherwise in the course of transit by or on behalf of the insured; or

    **3)** Being stored, disposed of, treated or processed in or upon the covered auto.

**g.** Before the pollutants or any property in which the pollutants are contained are moved from the place where they are accepted by the insured for movement into or onto the covered auto; or

**h.** After the pollutants or any property in which the pollutants are contained are moved from the covered auto to the place where they are finally delivered, disposed of or abandoned by the insured.

**2.** Pollution cost or expense.

## I. PROPERTY DAMAGE

**1.** Property damage to:

**a.** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**b.** Premises you sell, give away or abandon, if the property damage arises out of any part of those premises;

**c.** Property loaned to you;

**d.** Personal property in the care, custody or control of the insured;

**e.** That particular part of real property on which you or any contractors or subcontractors directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations; or

**f.** That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it.



Harborside Financial
Center Plaza Five, Suite
2900 Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com

## TORUS SPECIALTY INSURANCE CO.

## FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

2. Sub-paragraphs **a., c.** and **d.** of this exclusion do not apply to property damage (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.

3. Sub-paragraph **b.** of this exclusion does not apply if the premises are your work and were never occupied, rented or held for rental by you.

4. Sub-paragraphs **c., d., e.** and **f.** of this exclusion do not apply to liability assumed under a sidetrack agreement.

5. Sub-paragraph **f.** of this exclusion does not apply to property damage included in the products-completed operations hazard.

**J**. **PROPERTY DAMAGE TO YOUR PRODUCT**

Property damage to your product arising out of it or any part of it.

**K**. **PROPERTY DAMAGE TO YOUR WORK**

Property damage to your work arising out of it or any part of it and included in the products-completed operations hazard. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**L**. **PROPERTY DAMAGE TO IMPAIRED PROPERTY**

Property damage to impaired property or property that has not been physically injured, arising out of:

1. A defect, deficiency, inadequacy or dangerous conditions in your product or your work; or

2. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of tangible property arising out of sudden and accidental physical injury to your product or your work after it has been put to its intended use.

**M.** **PRODUCT RECALL**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. Your product;

2. Your work; or

3. Impaired property;



Harborside Financial
Center Plaza Five, Suite
2900 Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com

## TORUS SPECIALTY INSURANCE CO.

## FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**N.  AIRCRAFT**

Any bodily injury or property damage included within the products-completed operations hazard and arising out of any aircraft product or the grounding of any aircraft.

**O.  WAR**

Bodily injury, personal injury or property damage that results from, or any condition that is incidental to, any of the following: **(a)** war, whether or not declared; **(b)** civil war; **(c)** insurrection; **(d)** rebellion; **(e)** revolution; **(f)** warlike operations.

**P.  FUNGI OR BACTERIA**

**1.** Bodily injury, property damage, personal injury or advertising injury which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any **fungi or** bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage; or

**2.** Any loss, cost or expenses arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effect of, **fungi** or bacteria, by you or any other person or entity.

This exclusion does not apply to any **fungi** or bacteria that are, are on, or are contained in, a food product intended for consumption.

As used in this exclusion, **fungi** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**Q.  UNINSURED/UNDERINSURED MOTORIST**

Any liability imposed on the insured, or the insured's insurer, under any of the following laws:

**1.** Uninsured motorists;

**2.** Underinsured motorists;

**3.** Auto no-fault laws or other first party personal injury laws; or

**4.** Medical expense benefits and income loss benefits laws of any applicable state or jurisdiction.



Harborside Financial
Center Plaza Five, Suite
2900 Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com

## TORUS SPECIALTY INSURANCE CO.

## FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

**R.  CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

With respect to any one or more **certified acts of terrorism**, we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2007. The federal Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2007 sets forth the following criteria for a **certified act of terrorism**:

**1.**  The act resulted in aggregate losses in excess of $ 100 million; and

**2.**  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**S.  LIMITED TERRORISM EXCLUSION (OTHER THAN CERTIFIED ACTS)**

Damages arising, directly or indirectly, out of any act of terrorism other than a **certified act of terrorism.**

**T.   PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM**

Damages arising, directly or indirectly, out of a **certified act of terrorism** that are awarded as punitive damages.

**U.  SILICA**

**1.**  Any loss, claim or occurrence, whether for bodily injury, property damage, personal injury or advertising injury arising out of or in any way related to the actual, alleged or threatened discharge, dispersal, emission, release, escape, handling, contact with, exposure to or inhalation, ingestion or respiration of silica or products or substances containing silica or silicon dioxide in any form including, but not limited to, silica dust, sand or otherwise, or work involving the use of



Harborside Financial
Center Plaza Five, Suite
2900 Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com

## TORUS SPECIALTY INSURANCE CO.

## FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

or handling of silica or silicon dioxide in any form, even if other causes are alleged to contribute to or aggravate such loss, claim or occurrence.

**2.** This insurance also does not apply to any loss, claim or occurrence arising from or related to:

    **a.** Any supervision, instruction, recommendations, warnings or advice given or which should have been given in connection with the events described in Paragraph **1.** above; and

    **b.** Any obligation to indemnify, defend, share damages with or repay someone else who must pay damages because of events described in Paragraph **1.** above; and

    **c.** Any fines or penalties imposed because of events described in Paragraph **1.** above.

## V.  LEAD

Any liability arising out of the manufacture, distribution, sale, installation, removal, utilization, ingestion, or inhalation of, presence of or exposure as the case may be to lead or any material or product(s) containing lead.

## W.  INVERSE CONDEMNATION EXCLUSION

Any liability arising out of, or in any way connected with, the principles of eminent domain, adverse possession, dedication by adverse use, condemnation proceedings, or inverse condemnation, by whatever name called, and whether such liability accrues directly against you or by virtue of any agreement entered by or on your behalf.

## X.  NANOTECHNOLOGY

**1.** Any liability related to the actual, alleged, or threatened presence of or exposure to **nanotubes** or **nanotechnology** in any form, or to harmful substances emanating from **nanotubes** or **nanotechnology**. This includes the use of, consumption of, ingestion of, inhalation of, absorption of, contact with, existence of, presence of, proliferation of, discharge of, dispersal of, seepage of, migration of, release of, escape of; or exposure to **nanotubes** or **nanotechnology**. Such injury from or exposure to **nanotubes** or **nanotechnology** also includes, but is not limited to:

    **a.** The existence, storage, handling or transportation of **nanotubes** or **nanotechnology**;

    **b.** The removal, abatement or containment of **nanotubes** or **nanotechnology** from any structures, materials, goods, products, or manufacturing process;

    **c.** The disposal of **nanotubes** or **nanotechnology**;

    **d.** Any structures, manufacturing processes, or products containing **nanotubes** or **nanotechnology**;

    **e.** Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage;



Harborside Financial
Center Plaza Five, Suite
2900 Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com

## TORUS SPECIALTY INSURANCE CO.

## FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

**f.** Any product manufactured, sold, handled, or distributed by you or on your behalf which contains **nanotubes** or **nanotechnology**; or

**h.** Any supervision, instructions, recommendations, warranties (express or implied), warnings or advice given or which should have been given.

**2.** Any loss, cost or expense including, but not limited to, payment for investigations or defense, fines, penalties, interest and other costs or expenses, arising out of any:

**a.** Claim, suit, demand, judgment, obligation, order, request, settlement, or statutory or regulatory requirement that you or any other person or entity test for, monitor, clean up, remove, contain, mitigate, treat, neutralize, remediate, or dispose of, or in any way respond to, or assess the actual or alleged effects of **nanotubes** or **nanotechnology**; or

**b.** Claim, suit, demand, judgment, obligation, request, or settlement due to any actual, alleged, or threatened injury or damage from **nanotubes** or **nanotechnology** or testing for, monitoring, cleaning up, removing, containing, mitigating, treating, neutralizing, remediating, or disposing of, or in any way responding to or assessing the actual or alleged effects of, **nanotubes** or **nanotechnology** by any insured or by any other person or entity; or

**c.** Claim, suit, demand, judgment, obligation, or request to investigate which would not have occurred; in whole or in part, but for the actual or alleged presence of *or* exposure to **nanotubes** or **nanotechnology**;

This exclusion applies regardless of who produced, installed, used, owned, sold, distributed, handled, stored or controlled the **nanotubes** or **nanotechnology**.

With respect to this exclusion, the following definitions apply:

**1.** **Nanotubes** means hollow cylinders of carbon atoms or carbon fibers or any type or form of **nanotechnology** which contain remarkable strength and electrical properties used in any products, goods, or materials.

**2.** **Nanotechnology** means engineering at a molecular or atomic level.

## Y. NUCLEAR

Bodily injury or **property damage**:

**1. a.** With respect to which an insured under the Policy is also an insured under a nuclear energy liability Policy issued by Nuclear Energy Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such Policy but for its termination upon exhaustion of its limit of liability; or

**b.** Resulting from the **hazardous properties** of **nuclear material** and with respect to which **a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **b)** the insured is, or had this Policy not been issued would be, entitled to indemnity from the United states of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.



Harborside Financial
Center Plaza Five, Suite
2900 Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com

## TORUS SPECIALTY INSURANCE CO.

## FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

**2.** Bodily injury or **property damage** resulting from the **hazardous properties** of **nuclear material**, if:

   **a.** The **nuclear material a)** is at any **nuclear facility** owned by, or operated by or on behalf of, an insured or **b)** has been discharged or dispersed therefrom;

   **b.** The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   **c.** The bodily injury or **property damage** arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this Sub-paragraph **c.** applies only to **property damage** to such **nuclear facility** and any property thereat.

**3.** As used in this Exclusion **Y.:**

   **a.** **Hazardous properties** include radioactive, toxic or explosive properties;

   **b.** **Nuclear material** means **source material**, **special nuclear material** or **by-product material**;

   **c.** **Source material**, **special nuclear material**, and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   **d.** **Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor;**

   **e.** **Waste** means any waste material **(a)** containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content, and **(b)** resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility**.

   **f.** **Nuclear facility** means:

   **1)** Any **nuclear reactor;**

   **2)** Any equipment or device designed or used for:

   **a)** Separating the isotopes of uranium or plutonium; or

   **b)** Processing or utilizing **spent fuel**, or

   **c)** Handling, processing or packaging **waste;**



Harborside Financial
Center Plaza Five, Suite
2900 Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com

## TORUS SPECIALTY INSURANCE CO.

## FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

**3)** Any equipment or device used for the processing, fabricating or allying of **special nuclear material** if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

**4)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**;

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**g.** **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**h.** **Property damage** includes all forms of radioactive contamination of property.

## SECTION V. - DEFINITIONS

The following Definitions apply to this Policy:

**A.** **Followed Policy** means the policy listed in Item 7. of the Declarations of this Policy.

**B.** **Underlying Policies** means those policies that are scheduled in the Schedule of Underlying Excess Policies in Item 6. of the Declarations of this Policy and any other applicable underlying insurance, including any self-insured retentions.

## SECTION VI. - CONDITIONS

## A. CANCELLATION CLAUSE

**1.** This Policy may be canceled by the first Named Insured listed in Item 1. of the Declarations of this Policy by mailing or delivering to the Insurer at the address set forth in Item 9(b) of the Declarations advance written notice of cancellation. This Policy may be canceled by or on behalf of the Insurer by delivering to the first Named Insured or by mailing to the first Named Insured, by registered, certified, or other first class mail, at the first Named Insured's address set forth in Item 1. of the Declarations, written notice stating when thereafter, not less than fifteen (15) days in the event any premium is not paid when due, and not less than sixty (60) days in all other cases, cancellation shall be effective. Proof of mailing of such notice as aforesaid shall be sufficient proof of notice. It is agreed that the first Named Insured shall act on behalf of all Insureds with respect to giving and receiving notice of cancellation. The Policy Period terminates at the date and hour specified in such notice, but in case of notice of cancellation by the first Named Insured, in no event prior to the date such notice is received by the Insurer.

**2.** If this Policy shall be canceled by the first Named Insured, the Insurer shall return ninety percent (90%) of the unearned portion of the premium calculated on a pro rata basis unless there is a Minimum Earned Premium set forth in Item 8 (b) of the Declarations, in which case the Insurer will



Harborside Financial
Center Plaza Five, Suite
2900 Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com

# TORUS SPECIALTY INSURANCE CO.

# FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

retain the Minimum Earned Premium and return the difference, if any, between the Minimum Earned Premium and the unearned portion of the premium calculated on a pro rata basis.

**3.** If this Policy shall be canceled by the Insurer, the Insurer shall return to the first Named Insured the unearned portion of the premium calculated on a pro rata basis.

**4.** Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

## B.  ASSISTANCE AND COOPERATION

**1.** The Insurer shall have the right but not the duty to assume charge of the defense or settlement of any claim or suit against the Insured to which this Policy may apply upon exhaustion of the applicable limits of liability of the **Underlying Policies**. If the Insurer has exercised such right, it may withdraw from the defense and tender the defense to the Insured upon exhaustion of the applicable limits of liability under this Policy. If the Insurer does not exercise the right to assume charge of such defense or settlement, or if the applicable limits of the **Underlying Policies** are not exhausted, the Insurer shall have the right and shall be given the opportunity to associate effectively with the Insured or the Underlying Insurer or both, in the defense and control of any claim or suit likely to involve this Policy. In such events, the Insured, the Underlying Insurer and the Insurer shall cooperate in the defense of such claim or suit.

**2.** The Insured shall not, except at its own expense, settle any claim or suit or incur any defense costs for an amount to which this Policy applies without the Insurer's written consent.

## C.  CHANGES IN FOLLOWED POLICIES

If during the Policy Period of this Policy, the terms, conditions, exclusions or limitations of the **Followed Policy** are changed in any manner from those in effect on the inception date of this Policy, the Insured shall as a condition precedent to its rights under this Policy give to the Insurer as soon as practicable written notice of the full particulars thereof. This Policy shall become subject to any such changes upon the effective date of the changes in the **Followed Policy**, but only upon the condition that the Insurer agrees to follow such changes in writing and the Insured agrees to any additional premium or amendment of the provisions of this Policy required by the Insurer relating to such changes. Further, such change in coverage is conditioned upon the Insured's payment when due of any such additional premium required by the Insurer relating to such changes.

## D.  MAINTENANCE OF UNDERLYING INSURANCE

While this Policy is in effect, the Insured agrees to maintain the **Underlying Policies** in full force. The Insured's failure, or the failure of others, to comply with this Condition will not invalidate this Policy, but in the event of such failure, the Insurer will only be liable to the same extent as if there had been compliance.



Harborside Financial
Center Plaza Five, Suite
2900 Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com

# TORUS SPECIALTY INSURANCE CO.

# FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

## E.  PAYMENT OF PREMIUM

The first Named Insured listed in Item 1 of the Declarations of this Policy shall be responsible for and act on behalf of all Insureds with respect to the payment of any premiums due under this Policy.

## F.  REQUIRED NOTICES TO INSURER BY INSURED

### 1.  Notice of Occurrence, Offense, Claim or Loss

**a.**  The Insured shall, as a condition precedent to the obligations of the Insurer under this Policy, give written notice as soon as practicable to the Insurer of any occurrence, offense, claim or suit likely to involve this Policy.

**b.**  Without limiting the requirements of paragraph a. above, the Named Insured shall separately, and as soon as practicable, give written notice to the Insurer when a payment is made or reserve established for any occurrence, offense, claim or suit which has brought the total of all payments and reserves by the Insured, or Underlying Insurers to a level of twenty-five percent (25%) or more of the Underlying Aggregate Limit.

### 2.  Notice Regarding Underlying Insurance

The Insured shall, as a condition precedent to the obligations of the Insurer under this Policy, give written notice to the Insurer of the following events as soon as practicable but in no event later than thirty (30) days after an Insured has become aware of the event:

**a.**  Any **Underlying Policy** being cancelled or non-renewed or otherwise ceasing to be in effect or being uncollectible in part or in whole; or

**b.**  Any underlying insurer being subject to a receivership, liquidation, dissolution, rehabilitation or any similar proceeding or being taken over by any regulatory authority.

### 3.  Notice Regarding Material Change

The Insured shall, as a condition precedent to the obligations of the Insurer under this Policy, give written notice to the Insurer of the following events as soon as practicable but in no event later than thirty (30) days after an Insured has become aware of the event: that the Named Insured is consolidating with or merging with or into, or transferring all or substantially all of its assets to, or acquiring or being acquired by any natural person or entity or group of natural persons and/or entities acting in concert.

With respect to the Notice required in Paragraphs **1.**, **2.** and **3.** of this Condition **F.**, notice to an Underlying Insurer shall not constitute notice to the Insurer of this policy. Notice under this Policy shall be given to the Insurer at the appropriate address set forth in Item 9. of the Declarations of this Policy.



Harborside Financial
Center Plaza Five, Suite
2900 Jersey City, NJ 07311
Tel: 201 743 7700
Fax: 201 743 7701
www.torusinsurance.com

## TORUS SPECIALTY INSURANCE CO.

## FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY

**G.   RESTRICTIVE AS UNDERLYING**

Notwithstanding any provision to the contrary in this Policy, including, without limitation, the Coverage provisions in Section I of this Policy, if any **Underlying Policy** with limits in excess of the **Followed Policy** but underlying to this Policy (the "Intervening Policy") contains warranties, terms, conditions, exclusions or limitations more restrictive than the **Followed Policy**, whether on the effective date of this Policy or at any time during the Policy Period of this Policy, then this Policy shall be deemed to follow those more restrictive warranties, terms, conditions, exclusions or limitations of the Intervening Policy.

**H.   UNIMPAIRED UNDERLYING LIMITS**

The Insured warrants that the aggregate limits of the **Underlying Policies**, as shown in the Schedule of Underlying Insurance, shall be unimpaired as of the effective date of this Policy. In the event such underlying aggregate limits are impaired as of the effective date of this Policy, this Policy shall apply as if such aggregate limits were unimpaired. In the event of non-concurrent policy periods between this Policy and **Underlying Policies**, only occurrences, claims, or losses that would be covered during the policy period of this Policy shall be considered in determining the extent of any erosion or exhaustion of the underlying aggregate limits, and the Insured shall retain liability for any resulting gap in coverage.

**I.   SERVICE OF SUIT**

Pursuant to any statute of any state, territory or District of the United States which makes provision therefore, the Insurer hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder, arising out of this Policy.

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its Authorized Representative and countersigned on the Declarations Page by a dully authorized agent of the Insurer.

_____
President

_____
Secretary

| Named Insured: | Addison Hasid VI, LLC |
|---|---|
| Policy No: | 85310U160ALI |
| Endorsement No: | 1 |
| Endorsement Effective Date: | 10/04/2016 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY**

## SCHEDULE OF ENDORSEMENTS

**FORM NO.:**

**ENDORSEMENT NAME:**

| FORM NO.: | ENDORSEMENT NAME: |
|---|---|
| SSS0001 | INSURANCE COMPANY NAME CHANGE ENDORSEMENT |
| TSEXS0197CW | AUTO COVERAGE - EXCLUSION OF TERRORISM |
| TSEXS0216CW | CRISIS RESPONSE ENDORSEMENT |
| TSML0002CW | DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT |
| TSEXS0200CW | EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| TSEXS0169CW | GENERAL ENDORSEMENT |
| TSEXS0101CW | POLLUTION EXCLUSION (WITH HOSTILE FIRE EXCEPTION) |

**Named Insured:**    **Addison Hasid VI, LLC**      **Policy No:**    **85310U160ALI**

# INSURANCE COMPANY NAME CHANGE ENDORSEMENT

Torus Specialty Insurance Company has changed its name to StarStone Specialty Insurance Company.  This endorsement is attached to and forms a part of your policy.

This endorsement modifies your policy such that all references in your policy to "Torus Specialty Insurance Company" are hereby changed to "**StarStone Specialty Insurance Company**".

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



StarStone Specialty Insurance Company
Harborside Financial Center, Plaza 5, Suite 2600
Jersey City, NJ 07311
888-220-8477
www.starstone.com

| President | Secretary |
| --- | --- |

| Named Insured: | Addison Hasid VI, LLC |
|---|---|
| Policy No: | 85310U160ALI |
| Endorsement No: | 3 |
| Endorsement Effective Date: | 10/04/2016 |

**FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY**

## SCHEDULE OF UNDERLYING INSURANCE

| COVERAGE | INSURER<br>POLICY PERIOD<br>POLICY NUMBER | APPLICABLE LIMITS |
|---|---|---|
| COMMERCIAL<br><br>GENERAL<br>LIABILITY<br>COVERAGES<br>A AND B | Arch Speciality Insurance<br>Company<br>08/30/2016 - 08/30/2017<br>AGL0041008-00 | $1,000,000<br><br>EACH OCCURRENCE<br>$2,000,000<br>OTHER AGGREGATE<br>$1,000,000<br>PRODUCTS COMPLETED<br>OPERATIONS AGGREGATE<br>$1,000,000<br>PERSONAL AND<br>ADVERTISING INJURY |

[ ]  GENERAL AGGREGATE APPLIES PER LOCATION
[ ]  GENERAL AGGREGATE APPLIES PER PROJECT

*The above Schedule applies to any renewals or replacements thereof

| Named Insured: | Addison Hasid VI, LLC |
|---|---|
| Policy No: | 85310U160ALI |
| Endorsement No: | 4 |
| Endorsement Effective Date: | 10/04/2016 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY**

## AUTO COVERAGE – EXCLUSION OF TERRORISM

The Policy is amended as follows:

Any endorsement addressing acts of terrorism (however defined) in any **Followed Policy** does not apply to this excess insurance.

**A.** The provisions of this endorsement:

   **1.** Apply only to liability, damage, loss, cost or expense arising out of the ownership, maintenance or use of any auto that is a covered auto under this Policy; and

   **2.** Supersede the provisions of any other endorsement addressing terrorism attached to this Policy only with respect to liability, damage, loss, cost or expense arising out of the ownership, maintenance or use of any auto that is a covered auto.

**B.** The following definition is added and applies under this endorsement wherever the term terrorism is in bold text:

   **1. Terrorism** means activities against persons, organizations or property of any nature:

     **a.** That involve the following or preparation for the following:

       **(1)** Use or threat of force or violence; or

       **(2)** Commission or threat of a dangerous act; or

       **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

     **b.** When one or both of the following applies:

       **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

       **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**C.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for liability, damage, loss, cost or expense caused directly or indirectly by **Terrorism**, including action in hindering or defending against an actual or expected incident of **Terrorism.** Any liability, damage, loss, cost or expense is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. ***But this exclusion applies only when one or more of the following are attributed to an incident of Terrorism:***

1. The **Terrorism** is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the **Terrorism** was to release such material; or

3. The **Terrorism** is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the **Terrorism** was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the **Terrorism** and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of **Terrorism** which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraph **C.5.** or **C.6.** are exceeded.

With respect to this Exclusion, Paragraphs **C.5.** and **C.6.** describe the threshold used to measure the magnitude of an incident of **Terrorism** and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of **Terrorism,** there is no coverage under this Policy.

In the event of any incident of **Terrorism** that is not subject to this Exclusion, coverage does not apply to any liability, damage, loss, cost or expense that is otherwise excluded under this Policy.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

| Named Insured: | Addison Hasid VI, LLC |
|---|---|
| Policy No: | 85310U160ALI |
| Endorsement No: | 5 |
| Endorsement Effective Date: | 10/04/2016 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY**

## CRISIS RESPONSE ENDORSEMENT

The Policy is amended as follows:

**SCHEDULE**

| | | | |
|---|---|---|---|
| A.1. | Crisis Management Loss Limit: | $100,000 | Each Crisis Event |
| A.2. | Crisis Response Costs Limit: | $100,000 | Each Crisis Event |
| A.3. | Crisis Response Aggregate Limit: | $100,000 | Annual Aggregate  for Crisis Response Costs and Crisis Management Loss Combined |

**I.   CRISIS RESPONSE COVERAGE**

    **A.  SECTION I – COVERAGES** is amended to include the following:

    **CRISIS RESPONSE COVERAGE**

      **1.**  We will reimburse you or pay on your behalf, at our sole discretion, reasonable and necessary **crisis response costs** and **crisis management loss** arising out of:

        **a.  bodily injury** or property damage  for which coverage is provided under this Policy; or

        **b.**  the actual or immediate threat of **bodily injury** or property damage for which coverage would be provided under this Policy (hereinafter, item **b.** is referred to as imminent injury),

      but only with respect to a **crisis event** to which insurance applies. The amount we will reimburse you or pay on your behalf for such **crisis response costs** and **crisis management loss** is limited as described in **SECTION II. – CRISIS RESPONSE LIMITS OF INSURANCE.**

      **2.**  We will reimburse you or pay on your behalf **crisis response costs** and **crisis management loss** arising out of a **crisis event** only if:

        **a.**  The **bodily injury** or property damage or imminent injury takes place in the coverage territory;

    **b.** The **bodily injury** or property damage or imminent injury commences during the Policy period;

    **c.** Such **crisis response costs** and **crisis management loss** did not arise out of any fact, circumstance, pre-existing condition, situation, **bodily injury**, property damage, or imminent injury that you, prior to the inception date of this Policy, knew, or reasonably should have known, could lead to, cause or result in such **crisis response costs** or **crisis management loss**, and

    **d.** Such **crisis response costs** or **crisis management loss** are incurred within thirty (30) days after the commencement date of the **crisis event**.  The end of the Policy period will not cut short this thirty (30) day period.

**B.** **SECTION II. – LIMITS OF LIABILITY** is amended to include the following:

**CRISIS RESPONSE LIMITS OF INSURANCE**

    **1.** The Schedule above and the rules below establish the most we will reimburse or pay on your behalf for **crisis response costs** and **crisis management loss** regardless of the number of Insureds, **crisis events** or **affected persons**.

    **2.** The Crisis Response Aggregate Limit is the most we will reimburse or pay on your behalf for the sum of all **crisis response costs** or **crisis management loss** under this Endorsement.

    **3.** Subject to Paragraph **2.** above, the Each Crisis Response Costs Limit is the most we will reimburse or pay on your behalf for all **crisis response costs** arising out of any one **crisis event**.

    **4.** Subject to Paragraph **2.** above, the Crisis Management Loss Limit is the most we will reimburse or pay on your behalf for all **crisis management loss** arising out of one **crisis event**.

    **5.** The limits of insurance provided for **crisis response costs** and **crisis management loss** are included within and not in addition to the Limits of Insurance provided in the Declarations of this Policy.

All **crisis events** or all related or interrelated **crisis events** will be deemed to be one **crisis event**.

**C.** **SECTION IV. – EXCLUSIONS** is amended to include the following exclusion:

This insurance does not apply to:

**NEWLY ACQUIRED OR MERGED ENTITIES**
**Crisis response costs** or **crisis management loss** resulting from **bodily injury** or property damage or imminent injury that occurred prior to the date you acquired or merged with any other entity.

**D.** For the purposes of this endorsement, **SECTION V. – DEFINITIONS** is amended to include the following definitions:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1. **Affected persons** means those individuals who suffer direct **bodily injury** or property damage, or directly experience imminent injury, including such individuals immediate family members.

2. **Bodily injury** means physical injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

3. **Crisis event** means a man-made emergency situation, including but not limited to, arson, a bombing, the taking of hostages, a mass shooting, terrorism (if covered under the Policy), intentional contamination of food, drink, or pharmaceuticals that results in covered **bodily injury**, property damage or imminent injury to multiple persons and significant adverse regional or national news media coverage.

4. **Crisis management firm** means a public relations firm or crisis management firm, assigned or approved by us in writing that is hired by you to perform services of the type covered under **crisis management loss** in connection with a **crisis event**.

5. **Crisis management loss** means reasonable and necessary fees and expenses incurred by a **crisis management firm** or your employees in providing public relations and media management services for the purpose of maintaining and restoring public confidence in you.  These expenses may include printing, advertising, or mailing of materials to manage reputational risk.  This does not include the salaries of your employees.

6. **Crisis response costs** means:
   a. Reasonable and necessary **emergency transport expenses**, **emergency psychology expenses**, funeral expenses, travel expenses and temporary living expenses incurred by you to provide relief or support to **affected persons**, and
   b. Expenses incurred by you to secure the scene of a **crisis event**.
   **crisis response costs** shall not include **defense costs** or **crisis management loss**.

7. **Defense costs** means legal fees and expenses incurred by you for legal advice or services sought in anticipation of, or upon actual receipt of, a claim alleging liability and seeking damages for **bodily injury**, property damage or imminent injury.

8. **Emergency transport expenses** means reasonable and necessary emergency transport expenses, occurring within 24 hours after a **crisis event**, to transport an **affected person** sustaining **bodily injury** in a **crisis event** to a medical treatment facility.

9. **Emergency psychology expenses** means reasonable and necessary expenses for psychology or counseling services provided to **affected persons** and incurred within the first fourteen (14) days of a **crisis event**.  This does not include the costs or expenses of any medications or hospitalizations.  Such psychology or counseling services must be approved by the **crisis management firm**.

**E.   SECTION VI.  – CONDITIONS** is amended to include the following conditions:

**ANTI-STACKING PROVISION**

If the **crisis response costs** or **crisis management loss** provided under this Endorsement are also provided by any other insurance issued to you by us or any of our affiliated companies (whether or not such costs or loss are referred to using these same terms), the maximum limit of insurance under all insurance available shall not exceed the highest applicable limit of insurance available under any one Policy or Endorsement. This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically intended to apply as excess insurance over this Endorsement.

**INSURED'S DUTIES IN THE EVENT OF A CRISIS EVENT**

1.   You must see to it that we are notified by telephone within twenty-four (24) hours of a **crisis event** which may result in **crisis management costs** or **crisis management loss**. The call must be made to a **crisis management firm**.

2.   Thereafter you must provide written notice as soon as practicable.  To the extent possible, this written notice should include:
   **a.**   How, when and where the **crisis event** took place;
   **b.**   The names and addresses of any **affected parties** and witnesses; and
   **c.**   The nature and location of any injury or damage arising out of the **crisis event**.

3.   If reimbursement is sought directly by you, you must submit a claim for reimbursement of **crisis response costs** and **crisis management loss** within ninety (90) days after incurring such **crisis response costs** or **crisis management loss**. Such claim(s) must include invoices and receipts supporting such **crisis response costs** or **crisis management loss** for each and every expense in excess of fifty (50) dollars.

4.   Written notice and claim submission as required in Paragraphs **1.** and **2.** of this section, respectively, shall be mailed or delivered to:

   Torus U.S. Services
   Casualty Claim Department
   Harborside Financial Center
   Plaza Five, Suite 2900
   Jersey City, NJ 07311

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

| | |
|---|---|
| **Named Insured:** | Addison Hasid VI, LLC |
| **Policy No:** | 85310U160ALI |
| **Endorsement No:** | 6 |
| **Endorsement Effective Date:** | 10/04/2016 |

**Following Form Excess Liability Insurance Policy**

**Additional information, if any, concerning the terrorism premium:**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

| Named Insured: | Addison Hasid VI, LLC |
|---|---|
| Policy No: | 85310U160ALI |
| Endorsement No: | 7 |
| Endorsement Effective Date: | 10/04/2016 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY**

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

The Policy is amended as follows:

Any endorsement addressing acts of terrorism (however defined) in any **Followed Policy** does not apply to this excess insurance. The following provisions addressing acts of terrorism apply with respect to this excess insurance:

**SCHEDULE**

| **Certified Acts of Terrorism Retained Amount** | **$1,000,000** |
|---|---|

**A.** Coverage provided by this Policy for damages arising out of a **Certified Act of Terrorism** applies in excess of the Certified Acts of Terrorism Retained Amount described in Paragraph **B.** below.

**B.** **SECTION II. – LIMITS OF LIABILITY,** is amended to include the following:

The Certified Acts of Terrorism Retained amount refers to the amount stated in the SCHEDULE of this endorsement. This amount may consist of a self-insured retention, **Underlying Policies,** or a combination thereof.

The Certified Acts of Terrorism Retained Amount applies:

**1.** Only to damages arising out of a **Certified Act of Terrorism** covered under this Policy; and

**2.** Separately to each **Certified Act of Terrorism**.

We will pay those sums covered under this Policy only after your Certified Acts of Terrorism Retained amount has been exhausted by means of payments for judgments or settlements. Defense expenses shall not erode the Certified Acts of Terrorism Retained Amount.

**C.** **SECTION IV. – EXCLUSIONS,** is amended to include the following exclusion:

This Policy does not apply to any liability, damage, loss, cost or expense:

**TERRORISM**

Arising, directly or indirectly, out of an **Other Act of Terrorism** that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the coverage territory. However, this exclusion applies only when one or more of the following are attributed to such act:

1. The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

2. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ; or

3. The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

4. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

5. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an **Other Act of Terrorism** and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.


D. **SECTION V. – DEFINITIONS,** is amended to include the following definitions:

1. **Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

   b. The act resulted in damage:

      (1) Within the United States (including its territories and possessions and Puerto Rico); or

      (2) Outside of the United States in the case of:

         (a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

         (b) The premises of any United States mission; and

   c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. **Other Act of Terrorism** means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a **Certified Act of Terrorism**.

   Multiple incidents of an **Other Act of Terrorism** which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.


TS EXS 0200 CW 03 10                                                                                   Page 2 of 3

**E.** In the event of an **Other Act of Terrorism** that is not subject to this exclusion, coverage does not apply to any liability, damage, loss, cost or expense that is otherwise excluded under this Policy.

**F.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.


**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

| Named Insured: | Addison Hasid VI, LLC |
|---|---|
| Policy No: | 85310U160ALI |
| Endorsement No: | 8 |
| Endorsement Effective Date: | 10/04/2016 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY**

## GENERAL ENDORSEMENT

The Policy is amended as follows:

It is agreed that Item 1.(b) is amended by adding the following additional mailing address:

**ITEM 1.**   (b)        ADDRESS:

, GA,

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**

| Named Insured: | Addison Hasid VI, LLC |
|---|---|
| Policy No: | 85310U160ALI |
| Endorsement No: | 9 |
| Endorsement Effective Date: | 10/04/2016 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**FOLLOWING FORM EXCESS LIABILITY INSURANCE POLICY**

## POLLUTION EXCLUSION
## (WITH HOSTILE FIRE EXCEPTION)

The Policy is amended as follows:

**SECTION IV –EXCLUSIONS,** exclusion **H. POLLUTION LIABILITY,** is deleted in its entirety and replaced with the following exclusion:

This Policy shall not apply to:

**H.  POLLUTION LIABILITY**

1. Any liability, damage, loss, cost or expense arising out of the actual, alleged or threatened  discharge, dispersal, seepage, migration, release or escape of pollutants:

   **a.** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

   **b.** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   **c.** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom any insured may be legally responsible;

   **d.** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

      **1)** If the pollutants are brought on or to the premises, site or location in connection with such operations by any insured or such contractor or subcontractor; or

      **2)** If the operations are the test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in  any way respond to, or assess the effects of, pollutants;

      Sub-paragraphs **1.a.** and **1.d.1)** do not apply to bodily injury or property damage arising out of heat, smoke or fumes from a **hostile fire**.

      As used in this exclusion, a **hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be.

TS EXS 0101 CW 03 10

**e.** If the liability, damage, loss, cost or expense is included within the products-completed operations hazard;

**f.** That are, or that are contained in any property that is:

   **1)** Being transported or towed by, or handled for movement into, onto or from, the covered auto;

   **2)** Otherwise in the course of transit by or on behalf of any insured; or

   **3)** Being stored, disposed of, related or processed in or upon the covered auto.

**g.** Before the pollutants or any property in which the pollutants are contained are moved from the place where they are accepted by any insured for movement into or onto the covered auto; or

**h.** After the pollutants or any property in which the pollutants are contained are moved from the covered auto to the place where they are finally delivered, disposed of or abandoned by any insured.

**2.** Pollution cost or expense.


**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS SHALL REMAIN THE SAME.**